IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03004-M-RJ

KRISTI JO MOSS HODGE,           )
                                )
            Plaintiff,          )
                                )
      v.                        )        ORDER
                                )
CHATHAM COUNTY PAROLE &         )
PROBATION, et al.,              )
                                )
            Defendants.         )

This cause is before the court on defendant's converted motion for summary judgment. Mot. [D.E. 23]. For the reasons discussed below, the court grants the motion.

Relevant Procedural History:

On January 5, 2023, Kristi Jo Moss Hodge ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* an unverified complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 8].

Plaintiff seeks damages and alleges, *inter alia*, that: although she is deaf, she was denied a sign-language interpreter both during Chatham County parole proceedings and when receiving medical care at UNC Hospital while incarcerated; she was wrongly arrested for a parole violation and held in Chatham County jail until her release on May 6, 2020; and, circa November 28, 2022, while she was housed at the North Carolina Correctional Institute for Women ("NCCIW"), an individual identified as Ms. Godwin, in violation of the Americans with Disabilities Act ("ADA"), wrongly terminated plaintiff's prison employment at the "Correctional Enterprise Tags Plant [sic]" due to her use of a loud voice and hand gestures, which she attributes to her deafness, and failed to have a sign-language interpreter available at the termination meeting. See Compl. [D.E. 1].

On December 12, 2023, the court, *inter alia*: conducted its initial review; allowed claims to proceed against Ms. Godwin ("defendant") as to the purported discriminatory termination of plaintiff's prison employment and failure to provide a sign-language interpreter for the meeting; but dismissed without prejudice claims arising in another judicial district. See Order [D.E. 9].

On August 7, 2024, defendant (now identified as Tracey Matthews) filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Mot. [D.E. 23], with a memorandum and exhibits, see [D.E. 24]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court sent a "Rule 12" letter notifying plaintiff about defendant's motion to dismiss, the consequences of failing to respond, and the response deadline.

On August 14, 2024, plaintiff filed a response to the motion to dismiss. See [D.E. 26].

On August 26, 2024, plaintiff filed a motion for an extension of time to further respond, Mot. [D.E. 28], a "motion for request statement witness of North Carolina Correctional for Women Staff Member [sic]," Mot. [D.E. 29], and documents opposing the motion to dismiss [D.E. 30].

On November 18, 2024, the court, *inter alia*: converted defendant's motion to dismiss to a motion for summary judgment; denied without prejudice plaintiff's motion to the extent she sought to subpoena or depose witnesses; granted in part plaintiff's motion to the extent she sought an extension of time; and allowed plaintiff until December 11, 2024, to file any response to defendant's converted motion for summary judgment. See Order [D.E. 32]. Also on that date, the clerk sent plaintiff new Roseboro notice, notifying her about defendant's motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 33].

On December 10, 2024, plaintiff moved for an extension of time to respond to the motion for summary judgment, Mot. [D.E. 34], and the court granted the motion, Order [D.E. 35].

2

On January 2, 2025, plaintiff moved for another extension of time to respond to the motion for summary judgment. Mot. [D.E. 36]. The court granted in part the motion, allowing plaintiff an extension of time until February 3, 2025, see Order [D.E. 37], but she failed to further respond.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

Defendant argues that plaintiff failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing this action. See Def.'s Mem. [D.E. 24].

The PLRA states, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are

3

available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

Administrative exhaustion, however, is mandatory only if the prison grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 642 (2016). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

The North Carolina Department of Public Safety ("DPS"), now known as the North Carolina Department of Adult Correction ("DAC"), has a three-step inmate grievance

4

Administrative Remedy Procedure ("ARP"). See Moore, 517 F.3d at 721–22; see also Harris v. Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) ("North Carolina prisoners can satisfy the [PLRA's] exhaustion requirement by completing all three of the steps of the inmate grievance process, which culminates in the rendering of a decision upon the prisoner's appeal by the North Carolina Inmate Grievance Resolution Board.").

The ARP first encouraged informal resolution. See Def.'s Ex. B, [D.E. 24-3] at 1 (DPS Policy and Procedures, Chapter G, § .0301(a)). If informal resolution was unsuccessful, the inmate could submit a written grievance on Form DC-410. Id. at 7 (§ .0310(a)(1)). Within three days of submission, a screening officer reviewed the grievance to "decide whether it should be accepted, rejected, or returned." Id. (§ .0310(a)(4)). If unsatisfied with the Step-1 decision, the inmate could request relief from the Facility Head. Id. at 8 (§ .0310(b)(1)). If unsatisfied with a Step-2 decision, the inmate could "appeal to the Secretary of Public Safety through the Inmate Grievance Examiner" ("IGE"). Id. at 9 (§ .0310(c)(1)). The decision by the IGE, "or a modification by the Secretary of Public Safety," was the final step of the ARP. Id. (§ .0310(c)(6)).

Here, plaintiff did not file declarations in opposition to defendant's motion for summary judgment despite receiving Roseboro notice and having an opportunity to do so. See Celotex, 477 U.S. at 324; cf. Richardson v. Clarke, 52 F.4th 614, 623–24 (4th Cir. 2022); Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021). Instead, she merely relies on the allegations in her unverified complaint and unsworn responses. Cf. Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

The unverified complaint asserts plaintiff filed November 28 and December 17 grievances that received no response, and that she did not complete the grievance procedure. See Compl. [D.E. 1] at 7. Plaintiff also attaches two DC-410 forms, dated November 28 and December 16,

5

2022. See Compl. Attach. [D.E. 1-1] at 18–19. These forms, however, lack any signature of receiving officer, sequence number, or tracking number indicating the forms had been accepted.

The record reflects a March 26, 2024, memorandum from Kimberly D. Grande, Inmate Grievance Resolution Board ("IGRB") Executive Director, stating that, as to plaintiff, the "IGRB has located no (0) completed Step 3 appeal records which were received at Step 3 from September 1, 2022, to December 31, 2023." Def.'s Ex. A, [D.E. 24-2] at 1.

NCCIW Deputy Warden Michelle Carlton declares, *inter alia*: Carlton ensures offenders have access to the grievance procedure; grievances are held for five years; the grievance log shows plaintiff initiated 36 grievances at the NCCIW; the NCCIW takes the grievance process seriously and ensures all offenders can access grievance procedure; offenders are given form DC-410 to file a formal grievance; the NCCIW has lockboxes where grievance forms can be turned in; grievances cannot be tampered with and are collected by unit managers; officers and staff understand grievances may be filed against them and do not get offended or try to prevent offenders from filing grievances; offenders also can give a completed form DC-410 to a sergeant or higher ranking officer to initiate a grievance; all grievances are tracked with the correspondence tracking system ("CTS") and are given a tracking number; "a DC-410 form without a tracking number would have never been submitted"; the NCCIW grievance policy is maintained professionally and complies with the statewide grievance procedure; no staff destroys grievances; and all grievances, including plaintiff's, are processed according to policy. See id., Ex. 2, Carlton Decl. [D.E. 24-4] at ¶¶1–8.

Defendant also attaches plaintiff's grievance log, id., Ex. 2A, [D.E. 24-5] at 1–2 (showing Nov. 5, 2014, to July 12, 2024, CTS entries), with copies of plaintiff's grievances that were received between September 7, 2022, and January 10, 2024, see id., Ex. 2B, [D.E. 24-6] at 1–16.

6

Defendant's exhibits reflect that no grievances were received at the NCCIW from plaintiff between September 21, 2022, and February 21, 2023, and support a finding that plaintiff did not exhaust administrative remedies as to her claims before filing this action circa January 5, 2023.

In her various unsworn responses, plaintiff asserts, *inter alia*, that: she communicates via sign language and reads lips; Carlton's declaration is "not completely truthful [sic]" because she and other NCCIW offenders have filed grievances that did not receive responses; she does not understand the grievance procedure because she was not provided with a sign language interpreter; and she wrote several letters, including to the Civil Rights division of the United States Department of Justice, regarding defendant's decision to terminate her prison job due to her deafness while failing to provide a sign language interpreter for the termination meeting. See [D.E. 26, 29, 30].

Plaintiff does not show that, before filing this action, she sought, but was denied, assistance with understanding the ARP or completing grievance forms, or that an ARP copy was unavailable to her at the NCCIW. Cf. Def.'s Ex. B, [D.E. 24-3] at 1–2 (DPS Policy and Procedures, Chapter G, § .0302(a)(2) ("Any inmate who is incapable of understanding this procedure or completing the grievance form may request assistance. Requested assistance will be provided by staff designated by the Facility head"), § .0302(b)(1) ("A copy of the Administrative Remedy Procedure shall be readily available to all inmates and staff for their information and reviews [sic]. It shall be posted in conspicuous locations throughout the facility and shall be kept current in all libraries.")).

Thus, despite her ostensible deafness, her purported unfamiliarity with the ARP, her alleged attempts to seek relief outside the ARP, and any attempts to initiate grievances as to her claims *after* filing suit, plaintiff is not excused from the PLRA's requirement that she fully exhaust administrative remedies *before* filing this action. See Ross, 578 U.S. at 641 ("The PLRA's history

7

(just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion."); Woodford, 548 U.S. at 93 ("the PLRA exhaustion requirement requires proper exhaustion"); Booth, 532 U.S. at 741 n.6 ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); Williams v. Carvajal, 63 F.4th 279, 290 (4th Cir. 2023) ("Simple unawareness [of an administrative remedy], however, does not rise to the level of unavailability."); Moore, 517 F.3d at 725 ("a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are" (citations omitted)); see also Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (noting merely alerting officials as to alleged wrong needing redress is insufficient for exhaustion).

In sum, plaintiff's unverified complaint and unsworn responses, without more, fail to show that the ARP was "unavailable" to her within the meaning of Ross, 578 U.S. at 643–44, and are insufficient to defeat defendant's motion for summary judgment, see Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (noting, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him" (citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (finding, if a defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus

falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting plaintiff bears the burden of showing the unavailability of administrative remedies (citing Moore, 517 F.3d at 725)); cf. Griffin, 56 F.4th at 335–39.

After considering the record evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendant has met her burden of showing the absence of a genuine issue of material fact regarding plaintiff's failure to exhaust administrative remedies as to her instant claims before filing this action, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167. As to the purported "unavailability" of the ARP, however, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587 (emphasis and quotation omitted).

Accordingly, defendant is entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85, and the court dismisses the action without prejudice, see Moss, 19 F.4th at 623 n.3 (collecting cases).

### Conclusion:

For the reasons discussed above, the court: GRANTS defendant's converted motion for summary judgment [D.E. 23]; DISMISSES WITHOUT PREJUDICE the action due to plaintiff's failure to exhaust administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED this 12th day of February, 2025.

*Richard E. Myers II*

RICHARD E. MYERS II
Chief United States District Judge